IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:20-CV-228-RJ

ROYCELIA LEILAN PENDER,

    Plaintiff/Claimant,

v.

ORDER

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-25, -31] pursuant to Fed. R. Civ. P. 12(c). Claimant Roycelia Leilan Pender ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and decision of the Commissioner is affirmed.

## I. STATEMENT OF THE CASE

Claimant first filed an application for a period of disability and DIB on April 1, 2010, alleging disability beginning March 1, 2009. (R. 65, 878). Her claim was denied initially and upon reconsideration. *Id.* A hearing before Administrative Law Judge ("ALJ") Richard Perlowski was held on April 13, 2012, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 65). On August 29, 2012, the ALJ issued a decision denying

Claimant's request for benefits. (R. 62–78). On August 22, 2013, the Appeals Council denied Claimant's request for review. (R. 79–85).

Claimant filed a second application for a period of disability and DIB on August 29, 2013, alleging disability beginning August 30, 2012, the day after the ALJ's unfavorable decision in the prior case. (R. 954). Her claim was denied initially and upon reconsideration. *Id.* A hearing before Administrative Law Judge ("ALJ") Joseph Brinkley was held on June 20, 2017, at which Claimant, represented by counsel, and a VE appeared and testified. *Id.* On October 5, 2017, the ALJ issued a decision denying Claimant's request for benefits. (R. 951–73). On April 13, 2018, the Appeals Council denied Claimant's request for review. (R. 974–78). Claimant then filed a complaint in this court seeking review of the administrative decision, (R. 982–83), and on July 31, 2019, the court remanded the case to the Commissioner for further proceedings under 42 U.S.C. § 405(g), (R. 989–90). The Appeals Council subsequently remanded the case to an ALJ for further proceedings consistent with the court's order. (R. 1005).

On remand, ALJ Brinkley held a second hearing on February 25, 2020, at which Claimant, represented by counsel, and a VE appeared and testified. (R. 878, 903–50). On March 27, 2020, the ALJ issued a decision denying Claimant's request for benefits. (R. 875–902). Claimant bypassed written exceptions, making the ALJ's decision the final decision for purposes of judicial review. Pl.'s Mem. [DE-26] at 3; Def.'s Mem. [DE-32] at 2. Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was

2

reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65

3

F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the ALJ erred in (1) failing to properly consider the findings contained in a prior agency decision regarding Claimant's RFC, (2) failing to provide legal explanation and evidentiary support for certain limitations in the RFC, and (3) failing to properly address Claimant's need for an assistive device. Pl.'s Mem. [DE-26] at 7–17.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment from August 30, 2012, the alleged onset date, through December 31, 2015, her date last insured. (R. 880). Next, the ALJ determined Claimant had the following severe impairments: degenerative disc disease, hypertension, diabetes mellitus, hyperglycemia, headaches, obesity, and hyperlipidemia. *Id.* The ALJ also found Claimant had a nonsevere impairment of thyroid cancer. (R. 880–81). However, at step three, the ALJ concluded these

4

impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21–24).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with the following limitations:

> could have frequent, lateral rotation of the neck; can occasionally use the bilateral upper extremities for overhead lifting, reaching, pulling, and pushing; otherwise, can frequently use the bilateral upper extremities to reach, pull, and push in all other directions; can frequently use the bilateral upper extremities to handle (handling includes grasping), finger, and feel; can occasionally stoop, kneel, crouch, and climb stairs and ramps; can occasionally use the bilateral lower extremities to operate foot and leg controls; and never climb ladders, ropes, or scaffolds. She could have occasional exposure to temperature extremes and never work around dangerous, moving mechanical parts and unprotected heights. The claimant could never stand and/or walk on narrow, slippery surfaces (used to help develop the DOT's definition of balancing). She could work in a moderate noise environment. She could perform jobs not requiring binocular depth perception and binocular field of vision. The claimant needs the flexibility to alternate between sitting, standing, and walking every 30 minutes. She would not need to leave the workstation except when on regularly scheduled breaks. In an eight-hour workday that is comprised of regularly scheduled breaks and the types of interruptions that may take the claimant off task up to 10 percent of the total work schedule, the claimant could sit for a total of six hours and stand and walk for a combined total of six hours.

(R. 882–93). In making this assessment, the ALJ found Claimant's statements about her limitations not entirely consistent with the medical and other evidence in the record. (R. 885).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a pharmaceutical operator. (R. 894). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

5

numbers in the national economy. (R. 894–95).

## V. DISCUSSION

### A. The Prior Agency Decision

Claimant contends the ALJ failed to provide a proper explanation, as required by Social Security Acquiescence Ruling ("AR") 00-1(4) and *Albright*, for his departure from the finding that Claimant was limited to sedentary work by ALJ Perlowski in the prior August 29, 2012 decision. Pl.'s Mem. [DE-26] at 7–12. Specifically, Claimant argues that ALJ Brinkley determined Claimant was capable of a reduced range of light work but failed to cite evidence that actually showed improvement since the prior decision that found she was limited to sedentary work. *Id.* Defendant contends the ALJ's consideration of the prior RFC determination was proper. Def.'s Mem. [DE-32] at 6–13.

In *Albright*, the claimant sought disability benefits after sustaining neck and lower back injuries from a work-related automobile accident and a subsequent traffic accident. 174 F.3d at 474. The ALJ denied the claim, finding that "any lingering impairment was 'not severe,'" and the claimant's testimony regarding the intensity of his pain was not credible. *Id.* Albright did not appeal, but instead filed a new claim for the period following the ALJ's prior decision. *Id.* A different ALJ determined, based on the Fourth Circuit case of *Lively v. Sec'y of Health & Human Servs.*, 820 F.2d 1391 (4th Cir. 1987) and its purported codification in AR 94-2(4), that he was required to adopt the findings of the sequential evaluation process from the prior claim unless there was new and material evidence relating to that finding. *Albright*, 174 F.3d at 474-75. Concluding there was no new and material evidence, the ALJ denied the claim and the Appeals Council denied review. *Id.* at 475. On appeal to the district court, the magistrate judge determined that the agency in AR 94-2(4) had interpreted *Lively* too broadly and the district court agreed, remanding

6

Albright's claims for reconsideration. *Id.* The court of appeals affirmed the district court, holding that the agency impermissibly merged the claimant's two claims into one in contravention of the agency's "traditional rule that, absent an identity of claims, principles of claim preclusion (historically referred to as res judicata) do not apply." *Id.* at 476. The court went on the explain that "[i]n practice, then, AR 94-2(4) carves out an exception to the general rule that separate claims are to be considered separately." *Id.* In doing so, the *Albright* court distinguished the *Lively* case[2] on which AR 94-2(4) was premised, rejected AR 94-2(4) as erroneously restating the holding in *Lively*, and determined Albright's claims were not barred by the ruling in his prior case. *Id.* at 477–78.

As a result of *Albright*, the agency issued AR 00-1(4), which rescinded AR 94-2(4) and interpreted *Albright* to hold as follows:

> [W]here a final decision of SSA after a hearing on a prior disability claim contains a finding required at a step in the sequential evaluation process for determining disability, SSA must consider such finding as evidence and give it appropriate weight in light of all relevant facts and circumstances when adjudicating a subsequent disability claim involving an unadjudicated period.

AR 00-1(4), 2000 WL 43774, at *4 (Jan. 12, 2000). When weighing a prior finding, an ALJ should consider:

> (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a

---

[2] In *Lively*, the claimant was found to have the RFC to perform light work, and his claim was denied. *Albright*, 174 F. 3d at 475. However, two years later after Lively became 55 years of age, which potentially would have resulted in an award of benefits with an RFC for light work, Lively reapplied for benefits; however, the ALJ denied the claim based on the finding that Lively had the RFC to perform medium work. *Id.* The court of appeals determined that the prior finding that Lively was capable of only light work was "highly probative" but "not conclusive" and "had the agency produced substantial evidence of improvement in Lively's condition 'to indicate that [he] was capable of performing medium work,' the prior finding to the contrary need not have been sustained." *Id.* at 477 (quoting *Lively*, 820 F.2d at 1392) (footnote omitted).

7

different finding with respect to the period being adjudicated in the subsequent claim.

*Id.* An ALJ does not have to explicitly discuss each factor or state the weight given to each previous finding in order to comply with AR 00-1(4); rather, it must be clear that the ALJ considered the previous determination when evaluating the entire record. *Melvin v. Astrue*, 602 F. Supp. 2d 694, 702 (E.D.N.C. 2009) ("Although the ALJ did not specifically refer to AR 00-1(4) . . . or explain the precise weight he gave the ALJ's findings . . . the ALJ did *consider* the prior ALJ's findings as part of reviewing the record."); *see Cuffee v. Berryhill*, 680 F. App'x 156, 159 (4th Cir. 2017) ("[a]n ALJ does not necessarily have to walk through each factor in order to comply with AR 00-1(4); rather, reviewing and evaluating all the evidence presented at the correct standard complies with the acquiescence ruling." (quoting *Grant v. Colvin*, 2014 WL 852080, at *7 (E.D. Va. Mar. 4, 2014))).

Here, the ALJ expressly considered, in light of *Albright* and AR 00-1(4), ALJ's Perlowski's prior finding that Claimant was limited to sedentary work:

> I give little weight to the prior administrative law judge's decision. The medical evidence of record during the current period in question shows the claimant is capable of light work with significant additional restrictions. That is to say, I find limitations with movement of the neck as well as manipulative limitations, including some reaching limitations, given the claimant's cervical degenerative disc disease. That said, the claimant reported being able to drive, including driving from North Carolina to Maryland with breaks, and to cook a full meal on Sunday with breaks (Hearing Testimony). A November 2012 cervical MRI showed degenerative disc disease without nerve root compression (Ex. B1F). In December 2012, the claimant was offered but declined cervical epidural injections and instead chose to remain on her medications from pain management (Ex. B1F). Physical examination results from December 2013 established no loss of strength in the upper extremities (Ex. B6F). In light of the foregoing immediate discussion as other evidence discussed in more details below, I find that the claimant is capable of lifting, carrying, pushing, and pulling 20 pounds occasionally and 10 pounds frequently. Additionally, I have limited some of the claimant's postural activities as well as the use of her foot and leg controls, given her obesity and lumbar degenerative disc disease. In support of these limitations, I note than a November

8

Case 5:20-cv-00228-RJ   Document 33   Filed 12/15/21   Page 8 of 20

> 2012 MRI of the claimant's lumbar spine showed only a mild decrease in the posterior disc volume of her L5-S1 associated with a small disc protrusion/bulge but no mass effect on the S1 nerve root. Perhaps indicative of non-disabling evidence, in December 2012, the claimant declined lumbar epidural steroid injections and opted to continue with pain medications (Ex. B1F). Despite having had decreased motion of the lumbar spine and at times been noted to have an antalgic gait (Ex. B6F, B22F), the claimant had a full range of motion in all extremities (Ex. B22F). I have given the claimant some benefit of the doubt based upon these overall findings and thus am affording the claimant a sit/stand option to the extent noted in the residual functional capacity. That said, the claimant still can sit a total of six hours and stand and walk for a combined total of six hours in an eight-hour workday, all in an eight-hour workday.

(R. 883). It is clear that the ALJ considered the prior determination, and the court finds that the ALJ correctly applied AR 00-1(4) in doing so.

ALJ Perlowski determined that Claimant's disc disease and obesity precluded her from performing more than sedentary work. (R. 72). In doing so, he noted that Claimant experienced a work-related injury on March 25, 2009, and he cited an MRI of the lumbar spine from July 2009 that revealed mild to moderate facet joint arthrosis, most prominently at L4-5-S1 levels, and mild disc bulging at L1 through S1 levels. (R. 70). ALJ Perlowski also cited examinations where Claimant demonstrated pain with range of motions testing, tenderness of the spinal muscles and in the sacroiliac joint, limited spinal range of motion on some occasions, antalgic gait on some occasions, and decreased muscle strength in her legs. *Id.*

In the current decision, ALJ Brinkley considered the period from August 30, 2012, the day following ALJ Perlowski's decision, through December 31, 2015, Claimant's date last insured. ALJ Brinkley applied AR 00-1(4) and considered ALJ Perlowski's determination that Claimant was limited to sedentary work but afforded it little weight. In doing so, ALJ Brinkley considered Claimant's obesity and degenerative disc disease and cited new MRI evidence of Claimant's lumbar spine from November 2012, which demonstrated only a mild decrease in disc volume at

9

L5-S1, a small disc protrusion versus disc bulge, no defined mass effect on the S1 root areas, and a mild degree of narrowing. (R. 281, 883). This MRI was within three months after ALJ Perlowski's decision and demonstrated improvement from the 2009 MRI on which ALJ Perlowski relied, thus providing support for ALJ Brinkley's decision to deviate from the earlier RFC. ALJ Brinkley also noted that Claimant could drive and cook (although acknowledging she required breaks due to back pain); in December 2012, Claimant was offered but declined cervical epidural injections and instead chose to remain on her medications from pain management; examination results from December 2013 established no loss of strength in the upper extremities; and despite having had decreased motion of the lumbar spine and at times an antalgic gait, Claimant had a full range of motion in all extremities. (R. 883).

The ALJ also referenced his subsequent RFC discussion of other case evidence to support his decision to deviate from the earlier RFC. (R. 883). Claimant points to evidence in the record arguing that her condition was worsening over time; however, the ALJ considered that evidence and cited other evidence that would tend to support the ALJ's view that Claimant's condition had improved. This is not a case where the ALJ cherrypicked favorable evidence while ignoring other evidence, and it is improper for the court to re-weigh the evidence and substitute its own conclusions for those of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Howard v. Berryhill*, No. 4:16-CV-228-D, 2017 WL 4002146, at *4 (E.D.N.C. Aug. 25, 2017) (the ALJ properly considered a prior determination by explicitly analyzing it in accordance with AR 00-1(4), and it was insufficient for the claimant to point to other evidence that the ALJ considered and ask the court to reach a different conclusion), *recommendation adopted by* 2017 WL 3995812 (E.D.N.C. Sept. 11, 2017).

The ALJ noted that Claimant did not indicate to any treatment provider that she could not function some days due to her impairments. (R. 886). The ALJ discussed Claimant's back strain suffered as the result of a motor vehicle accident in September 2013, after which she was treated conservatively with physical therapy and medication in 2013 and 2014. (R. 886–87). There is a gap in treatment records from April 2014 to February 2017, which the court notes is more than a year after the date last insured. However, it is permissible to consider post-DLI evidence when relevant to the issue of disability. *See Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012) (holding post-DLI records may be relevant to the issue of disability) (citing *Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987)). Here, the post-DLI evidence supports that Claimant's condition was continuing to improve where examinations from 2017 and 2018 demonstrate Claimant had no spinal tenderness, full range of motion in all extremities, some gait disturbance and tightness in her right neck and shoulder, and was advised to exercise for thirty minutes a day. (R. 887); *see Harrell v. Saul*, No. 5:19-CV-121-D, 2019 WL 3933749, at *6 (E.D.N.C. July 26, 2019) (finding the ALJ complied with both AR 00–1(4) and *Albright* where he considered and weighed the prior disability finding and identified new material showing a change in the claimant's condition as the basis to depart from the earlier findings), *recommendation adopted by* 2019 WL 3928647 (E.D.N.C. Aug. 19, 2019); *McKenzie v. Berryhill*, No. 7:16-CV-00406-D, 2018 WL 1414589, at *4 (E.D.N.C. Jan. 25, 2018) (finding there was substantial evidence to show that the ALJ complied with AR 00–1(4) where the ALJ specifically addressed the prior ALJ decision and afforded it some weight and the ALJ's discussion suggested that subsequent evidence failed to support all of the conclusions of the earlier determination), *recommendation adopted by* 2018 WL 1403604 (E.D.N.C. Mar. 20, 2018). ALJ Brinkley considered and weighed the prior RFC finding in light of new evidence showing Claimant's condition had changed since ALJ Perlowski's

11

decision. Accordingly, the ALJ correctly applied AR 00-1(4), and his decision to afford ALJ Perlowski's RFC determination little weight is supported by substantial evidence.

**B.     The RFC Determination**

Claimant contends the ALJ's basis is unclear for the limitation to frequent lateral rotations of the neck and the option to alternate between sitting, standing, or walking every thirty minutes. Pl.'s Mem. [DE-26] at 12–16. Claimant argues that because there is no medical opinion to support these limitations, the ALJ is impermissibly playing the role of doctor. *Id.* Defendant contends it is the role of the ALJ to formulate the RFC and he may do so without a physician's opinion. Def.'s Mem. [DE-32] at 13–18.

An individual's RFC is the capacity he possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5.

Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Brown*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ

12

has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ, and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence" and also "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." S.S.R. 96-8p, 1996 WL 374184, at *7; *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

In this case, Claimant questions two limitations in the ALJ's RFC: the limitation to frequent lateral rotations of the neck and the ability to alternate between sitting, standing, or walking every thirty minutes. Claimant contends there is no medical opinion in the record that addresses her ability to rotate her neck or her need for a sit/stand/walk option. The RFC is not a medical determination but rather is an administrative one, and it is the ALJ's duty to formulate the RFC after considering the entirety of the evidence. 20 C.F.R. § 404.1546(c). In doing so the ALJ must consider opinions of medical sources, but there is no requirement that the RFC mirror the language of a medical source; rather, the RFC must be supported by substantial evidence. 20 C.F.R. § 404.1527(d)(2); *see Spradley v. Saul*, No. 1:20CV337, 2021 WL 1739013, at *8 (M.D.N.C. May 3, 2021) (rejecting argument that the ALJ erred by formulating the RFC without adopting any medical opinions because there is no requirement that the ALJ base the RFC on a medical opinion). The cases cited by Claimant do not stand for the proposition that an ALJ's RFC must be supported by a medical opinion but rather they found error where an ALJ interpreted particular medical

13

evidence or rejected a physician's opinion without proper explanation or support. *See, e.g., Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (finding "the ALJ's designation of Lewis' course of treatment as 'conservative' amounts to improperly 'playing doctor' in contravention of the requirements of applicable regulations" where the record demonstrated Claimant had extensive treatment, including taking powerful pain medication, receiving injections, nerve blocks, and an ablation procedure, and undergoing multiple surgeries); *Webster v. Colvin*, No. 1:11CV101, 2014 WL 4060570, at *5 (M.D.N.C. Aug. 15, 2014) (finding the ALJ's RFC was not supported by substantial evidence where the three opinions in question all included work restrictions beyond those addressed by the ALJ, and the ALJ failed to address contrary evidence supporting the restrictions); *Matthews v. Astrue*, No. CIV.A. 8:08-1919TLWB, 2009 WL 2782088, at *7 (D.S.C. Aug. 28, 2009) (explaining that "[w]ithout some expert interpretation of the evidence, the ALJ cannot read the MRI results or arrive at some conclusion about what they mean, either relative to other evidence or in regards to the plaintiff's limitations," but finding the ALJ expressly relied on the doctors' interpretations of the MRI results); *Grimmett v. Heckler*, 607 F. Supp. 502, 502 (S.D. W. Va. 1985) (finding the ALJ's RFC was only sustainable if uncontradicted psychiatric evidence indicating serious impairments was ignored, and this was error in the absence of any psychiatric or psychological evidence to support his position). Here, the ALJ did not interpret "raw data" or ignore limitations in medical opinions that were supported by evidence in the record.

The ALJ discussed Claimant's testimony and the medical evidence related to Claimant's cervical spine, (R. 884–87), and explained the limitations imposed as a result, including the limitation to frequent lateral rotations of the neck, as follows:

> I find the medical evidence is not fully consistent with the alleged disabling loss of functioning. Regarding her cervical spine, she reported she is able to drive, and drives to church, the pharmacy, her doctor offices, and she drove as far as

14

Maryland, though she said she took breaks. She claimed she had problems lifting a gallon of milk and lifting her arms to put up clothes but is able to cook a full meal on Sundays with breaks (Hearing Testimony). A cervical MRI in November 2012 showed degenerative disc disease at C5-6 but no disc herniation or evidence of nerve root abnormality or cord ischemia. In October 2012, cervical spine range of motion was normal except in extension. The upper extremities had normal muscle tone and reflexes but decreased sensation in the right hand. In December 2012, she declined cervical epidural injections and continued with Norco and Norflex from pain management (Ex. B1F). In September 2013, she had no numbness or tingling in the arms and no loss of strength. In December 2013, she completed physical therapy after a motor vehicle accident and had ting[l]ing in the right upper extremity (Ex. B6F). She has not had any recommendation for surgery for her cervical degenerative disc disease. I find her cervical degenerative disc disease results in a limitation to lifting, carrying, pushing, and pulling 20 pounds occasionally and 10 pounds frequently; frequent lateral rotation of the neck; occasional use of the bilateral upper extremities for overhead lifting, reaching, pulling, and pushing, and otherwise frequent use of the bilateral upper extremities to handle (handing includes grasping), finger, and feel.

(R. 890–91). Claimant does not point to any medical or opinion evidence supporting a greater limitation with regard to Claimant's ability to rotate her neck laterally. The ALJ considered Claimant's testimony and the medical evidence of record, and the limitation to frequent lateral rotation of the neck is supported by substantial evidence.

The ALJ also discussed Claimant's testimony and the medical evidence related to Claimant's lumbar spine, (R. 884–87), and explained the limitations imposed as a result, which included the sit/stand/walk accommodation, as follows:

The claimant also has lumbar degenerative disc disease. An MRI of the lumbar spine in November 2012 showed only a mild decrease in the posterior disc volume of L5-S1 with a small disc protrusion/bulge but no mass effect on the S1 nerve root (Ex. B1F). In December 2012, she said her current medication helped her pain, and she declined lumbar epidural steroid injections (Ex. B1F). She had a motor vehicle accident in September 2013 (Ex. B10F). She completed physical therapy in December 2013 but still had back pain and tingling in the upper thigh. She had a mildly antalgic gait and slightly decreased range of motion of the lumbar spine. She had tenderness to palpation along the lumbar paraspinals (Ex. B6F). In February 2014, she reported pain and was ambulatory but slow in movement and limped favoring the right side (Ex. B9F). In February 2017, however, she had no spinal tenderness and had full range of motion in all extremities. In March 2017, she was

15

> noted to have gait disturbance (Ex. B22F). She has not had any recommendation for surgery for her degenerative disc disease. I find the claimant's lumbar degenerative disc disease results in her ability to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; stand and walk for a combined total of six hours; sit for a total of six hours; occasionally stoop, kneel, crouch, and climb stairs and ramps; occasionally use the bilateral lower extremities to operate foot and leg controls; never climb ladders, ropes, or scaffolds. She could never work around dangerous, moving mechanical parts or unprotected heights. She could never stand and/or walk on narrow, slippery surfaces. She would need the flexibility to alternate between sitting, standing, and walking every 30 minutes but would not need to leave the workstation except for when on regularly scheduled breaks.

(R. 891). The ALJ thoroughly discussed Claimant's back impairment, including her testimony, the treatment notes, and the opinion evidence, and the court can follow the ALJ's reasoning in providing for a sit/stand/walk accommodation. *See Ramsey v. Saul*, No. 2:20-CV-00734, 2021 WL 4513625, at *14 (S.D.W. Va. June 25, 2021) ("the ALJ's review of the record of evidence relating to Claimant's limitations in sitting, standing and walking demonstrates that the ALJ's finding on the stand/sit/walk option is a reasonable limitation in the RFC assessment."), *recommendation adopted sub nom. Ramsey v. Kijakazi*, 2021 WL 4513604 (S.D.W. Va. Oct. 1, 2021).

Claimant argues the record indicates she requires position changes more frequently than every thirty minutes and points to her testimony that she could only sit for fifteen minutes, could not drive for more than twenty minutes, and could only stand for fifteen minutes; Dr. Barrow's report that Claimant could not stand for more than twenty minutes; and a note from her initial agency interview stating that Claimant was in severe pain, had to stand at the end of the interview, and used a cane to stand and ambulate. Pl.'s Mem. [DE-26] at 13–14. The ALJ considered Claimant's testimony regarding her limitations but found the medical evidence and other evidence of record did not fully support her testimony, specifically citing that she could drive and cook with breaks, she did not mention her severe functional limitations to her treatment providers, and her

16

mild MRI findings, conservative treatment, and improvement in symptoms over time. (R. 885). The ALJ also considered Dr. Burrow's June 16, 2014 opinion but afforded it little weight because Dr. Burrows indicated it was based on what Claimant told him and that a functional capacity assessment would have been more beneficial.[3] (R. 491); *see Hughes v. Saul*, No. 1:20CV547, 2021 WL 2186447, at *11 (M.D.N.C. May 28, 2021) ("controlling precedent and the regulations make abundantly clear that, 'if a physician's opinion is not supported by clinical evidence[,] ... it should be accorded significantly less weight[.]'" (citing *Craig*, 76 F.3d at 590; 20 C.F.R. § 416.927(c)(2)-(4); *Bishop v. Comm. of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) (affirming ALJ's rejection of medical opinion because that opinion "appeared to mirror [the claimant]'s subjective statements" and conflicted "with the mild to moderate diagnostic findings, the conservative nature of [the claimant]'s treatment, and the generally normal findings during physical examinations")). Finally, the observations of the agency interviewer were made on September 17, 2013, which was less than two weeks after Claimant was injured in a motor vehicle accident. (R. 223). The ALJ acknowledged Claimant's accident and attendant injuries but found that her condition improved after conservative treatment with physical therapy and medication. (R. 887). The ALJ considered Claimant's testimony and the medical evidence of record, and the sit/stand/walk accommodation is supported by substantial evidence.

---

[3] Dr. Burrows also stated at the outset of his opinion that

> patient comes in for a disability evaluation, answering questions for a lawyer to help her as best I can. Recall, she has been on disability with workmen's comp in the past and had her benefits stopped because she was invest[igat]ed by a private investigator and apparently was not felt to be as disabled as reported. I adamantly had wanted functional capacity assessment for this patient but apparently insurance will not cover.

(R. 488). This statement further supports the ALJ's conclusion that Dr. Barrow's opinion was based on Claimant's own statements rather than Dr. Burrow's examination of Claimant and, thus, was of limited value. Additionally, Claimant did not challenge the ALJ's decision to afford Dr. Burrow's opinion little weight.

17

## C.    The Claimant's Need for an Assistive Device

Claimant contends the ALJ's determination that Claimant's cane was not medically necessary relies on post-DLI evidence and is not supported by substantial evidence. Pl.'s Mem. [DE-26] at 16–17. Defendant argues that the record supports the ALJ's decision that Claimant's cane was not medically necessary. Def.'s Mem. [DE-32] at 19–20.

The ALJ must consider the impact of a "medically required" hand-held assistive device on a claimant's functional capacity. *See Taylor v. Berryhill*, No. 5:17-CV-78-FL, 2018 WL 852396, at *3 (E.D.N.C. Jan. 10, 2018) (citing *Eason v. Astrue*, No. 2:07-CV-30-FL, 2008 WL 4108084, at *16 (E.D.N.C. Aug. 29, 2008); S.S.R. 96–9p, 1996 WL 374185, at *7 (July 2, 1996)). "The requirement to use a hand-held assistive device may . . . impact . . . [an] individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling." 20 C.F.R. part 404, subpt. P, app. 1, § 1.00J.4. Social Security Ruling 96-9p provides guidance regarding when a hand-held assistive device is medically required.[4] S.S.R. 96-9p, 1996 WL 374185, at *7. "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically or only in certain situations; distance and terrain; and any other relevant information)." *Id.* "[A] prescription or the lack of a prescription for an assistive device is not necessarily dispositive of medical necessity." *Fletcher v. Colvin*, No. 1:14-

---

[4] "While Social Security Ruling 96-9[p] concerns individuals capable of less than a full range of sedentary work, district courts within the Fourth Circuit consistently rely on the Ruling for guidance when a claimant alleges that a hand-held assistive device was not adequately considered in his or her disability determination." *Peake v. Berryhill*, No. 5:17-CV-01998, 2018 WL 1178256, at *15 (S.D. W. Va. Feb. 8, 2018), *adopted by* 2018 WL 1177354 (Mar. 6, 2018).

18

CV-380, 2015 WL 4506699, at *8 (M.D.N.C. July 23, 2015) (citing *Staples v. Astrue*, 329 F. App'x 189, 191–92 (10th Cir. 2009)).

> The ALJ found Claimant's use of a cane not medically necessary, explaining as follows:
>
> Though the claimant entered the hearing room using a single point cane in her right hand, I do not find it to be of medical necessary. She stated her doctor only told her to use it periodically as needed. She said she used the cane to keep from falling, and she fell in December 2019 and in 2020 (*after* the date last insured). She also said she used the cane when she stood (Hearing Testimony). A single-point cane was prescribed by orthopedist Dr. Divya Patel in October 2012. The claimant ambulated without an assistive device but had an antalgic gait (Ex. B1F). In September 2013, she had a motor vehicle accident. She ambulated with a cane but was noted to ambulate at the scene without difficulty (Ex. B10F). In December 2013, February 2014 (Dr. Barrow), and February 2017, she was noted to have gait disturbance but no mention of her using a cane (Ex. (Ex. B6F, B9F, B22F). At a different visit with Dr. Hardy in February 2014, she was noted to walk with a straight cane (Ex. B9F). On June 5, 2017, Dr. Talbot gave the claimant a blanket prescription for a cane, with no explanation of what kind of cane for what i[t] was to be used for (Ex. B23F). I have not included use of a cane in the residual functional capacity, because there is nothing explaining the cane's specific purpose and most medical evidence of record (especially recent medical evidence) fail to show the claimant presented with it or used it when she showed up for treatment. Her physical exams, especially the more recent ones, show all extremities had full range of motion. Furthermore, the claimant was told to exercise at least 30 minutes per day. I have instead given the claimant a sit/stand option to give the utmost consideration to her complaints. In conclusion, the record fails to establish that the use of the cane is of medical necessity, as required by applicable security rulings and regulations.

(R. 891).

Dr. Patel prescribed a single-point cane for Claimant on October 26, 2012 for lower back and lower limb pain, and reissued the prescription on November 21, 2012, and Dr. Talbot prescribed a cane on June 5, 2017, but the ALJ correctly noted that on none of these occasions did the doctors describe the circumstances for which the cane was needed. (R. 285–86, 289, 874, 1100). The ALJ also cited evidence of Claimant's inconsistent use of a cane throughout the record. For example, an emergency room treatment note after Claimant's September 5, 2013 motor vehicle

accident indicated that she had a history of neck and back pain and use of a cane but that she ambulated at the scene without difficulty. (R. 479). On May 22, 2013, her gait was noted to be "mildly antalgic without assistive device," (R. 292–93), and, as the ALJ noted, while there were times when Claimant was noted to use her cane, there were other times when she did not, (R. 891). The ALJ did not rely solely on post-DLI evidence in making this determination, and the post-DLI evidence is relevant to the extent it demonstrates Claimant's impairments were not intractable. *See Bird*, 699 F.3d at 340. The ALJ sufficiently explained his determination that a sit/stand/walk accommodation and other postural limitations could account for Claimant's back impairment and that a cane was not necessary. Accordingly, Claimant has not met her burden of showing that an assistive device was medically necessary, and the ALJ did not err in discussing whether the cane was medically required. *See Matthews v. Berryhill*, No. 5:18-CV-60-D, 2019 WL 577427, at *6 (E.D.N.C. Jan. 24, 2019), *adopted by* 2019 WL 572870 (E.D.N.C. Feb. 12, 2019); *see also Gilmer v. Berryhill*, No. 3:17-CV-539-FDW, 2018 WL 3518470, at *2 (W.D.N.C. July 20, 2018) ("The claimant bears the burden of presenting 'medical evidence establishing the need for a cane and describing the circumstances for which it is needed.'") (quoting S.S.R. 96-9p).

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-25] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE-31] is ALLOWED, and the final decision of the Commissioner is AFFIRMED.

SO ORDERED, this the 14th day of December 2021.

Robert B. Jones, Jr.
United States Magistrate Judge